**Earl J. LOLLIS and Ruth Lollis, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 76–2977.

United States Court of Appeals, Ninth Circuit.

May 1, 1979.

John Bucan and Wm. T. Ivey, Jr., Merced, Cal., for appellants.

Myron C. Baum, Asst. Atty. Gen., Marilyn E. Brookens, Dept. of Justice, Washington, D. C., for appellee.

Before DUNIWAY and SNEED, Circuit Judges, and KELLEHER,* District Judge.

DUNIWAY, Circuit Judge:

Appeal from a decision of the Tax Court, which is reported at P–H Memo T.C. ¶ 76,-015.

Most of the facts were stipulated. They are fully outlined in the Tax Court's decision, and we do not repeat them here. The taxpayers do not attack most of the deficiencies assessed. We consider briefly the four arguments that they do make.

■ First, they argue that the Tax Court should have allowed more than 40% of certain expenditures as being for ordinary and necessary business expenses. The expenditures are evidenced only by debits against the bank account in which most of the receipts from the taxpayers' business were deposited. However, there is no evidence whatever as to what was done with the withdrawn moneys. The Tax Court allowed 40% of the amounts as business expense. The short answer to the taxpayers' argument is that they cannot sustain their burden of proof. As the court said in *Cohan v. C. I. R.,* 2 Cir., 1930, 39 F.2d 540, 543–44:

> Absolute certainty in such matters [estimating deductions] is usually impossible and is not necessary; the Board should make as close an approximation as it can, *bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making.*

(Emphasis added.)

The best that taxpayers could offer was testimony by their accountant that in the years 1967 through September 30, 1973, the average cost to the business of goods sold was 70 percent. The accountant also produced, over the Commissioner's objection, Dun & Bradstreet figures for 1962 and 1963 of 74.29% for tire, battery, and accessory dealers and 76.57% for gasoline service stations. This evidence did not compel the Tax Court to accept taxpayers' claim that 70% was correct. The accountant's figures were from the tax returns of the business, and those had not been audited. Moreover, the accountant did not observe inventory or confirm receivables. And there is nothing in the record showing that the taxpayers' business is comparable to those from which Dun & Bradstreet drew its percentages, assuming the highly doubtful proposition that the Dun & Bradstreet evidence was admissible at all. Furthermore, the Commissioner and the taxpayers made intensive efforts to determine business expenses and cost of goods sold, and the resulting figures were stipulated to. We see nothing in the record that compels the addition of any

---

* The Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

percentage of the unidentifiable debits to those figures, much less 70%.

The taxpayers argue that it was arbitrary to treat 40% of the amounts in question as business expense. Perhaps it was, but it would have been equally arbitrary to pick some other percentage. What the Tax Court did, whether "arbitrary" or not, was more favorable to the taxpayers than their proof requires.

■ Second, the taxpayers argue that the Commissioner should not have included in their gross receipts the amounts of cash that they paid to their son Carl Lollis, a partner in the business, as his partnership share, and cash that they used for their own personal expenses.

The Commissioner determined the amount of the gross receipts of the business by first adding up the credits to the bank account, second, deducting credits that were proved to represent moneys paid in from sources other than the business and not taxable, such as repayments of loans, deposited checks that bounced, transfers from a savings account, and moneys collected as agent for another, and then adding other moneys known to have been received by taxpayers but not deposited in the account. These latter included checks payable to the business but cashed by taxpayer Earl rather than deposited, rental income received but not deposited, and currency paid to Carl and currency used by the taxpayers for personal expenses. Only the last two items are now questioned.

The source of the currency was not proved. Taxpayers say that it came from the checks that were cashed rather than deposited, and from the rent moneys that were deposited. However, no record could be found to substantiate their claim; the most that taxpayers' accountant could say is that the currency could have come from those sources. There is no proof that it did. The cash could equally well have been received from customers of the business and never deposited or accounted for at all. The taxpayers' burden of proof was not met. *Rockwell v. C. I. R.,* 9 Cir., 1975, 512 F.2d 882, 885. The Tax Court's finding is not clearly erroneous. *Commissioner of Internal Revenue v. Duberstein,* 1960, 363 U.S. 278, 289–91, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

■ Third, the taxpayers say that fraud penalties should not have been assessed. As to these, the Commissioner has the burden of proof. *Baumgardner v. C. I. R.,* 9 Cir., 1957, 251 F.2d 311. The Tax Court correctly held that he met his burden. Consistent and substantial understatement of income is itself evidence of fraud. *Baumgardner, supra.* There was such understatement here, as is shown by the following:

| Year | Gross receipts as reported by taxpayers | Gross receipts as found by the Tax Court |
|------|----------------------------------------|------------------------------------------|
| 1963 | $47,025.91 | $ 92,444.06 |
| 1964 | 40,776.45 | 101,250.14 |
| 1965 | 32,796.50 | 79,370.13 |
| 1966 | 49,177.00 | 86,258.47 |

| Year | Taxable income as reported by Taxpayers | Taxable income as computed by Commissioner under Tax Court's decision | Amount of income understatement |
|------|----------------------------------------|---------------------------------------------------------------------|--------------------------------|
| 1963 | $3,731.33 | $34,202.53 | $30,471.20 |
| 1964 | 2,862.59 | 27,973.93 | 25,111.34 |
| 1965 | 3,898.16 | 25,776.70 | 21,878.54 |
| 1966 | 2,647.00 | 28,915.21 | 26,268.21 |

■ Inadequate or non-existent records are also a badge of fraud. *Estate of Mazzoni v. C. I. R.,* 3 Cir., 1971, 451 F.2d 197, 202, and here it is an understatement to call the taxpayers' records inadequate. The degree to which they were false is shown in the foregoing tables. There is further evidence of fraud, but the foregoing is sufficient.[1]

■ Fourth, taxpayers argue that it was error to assess the full fifty percent fraud penalty against Earl, because the couple's income is community property, one-half of which is owned by Ruth, who was not a party to the fraud. We cannot agree.

Under 26 U.S.C. § 6013(d)(3), when a joint return is filed, liability for the tax is joint and several. However, 26 U.S.C. § 6653(b) which establishes the 50% penalty also provides:

> In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.

This clearly relieves Ruth of liability for the fraud, and no penalty has been assessed against her. But it does not change the rule of § 6013(d)(3) that Earl is severally liable for the entire tax. The fraud penalty has been applied to that tax. We find nothing in § 6653(b) which requires that the penalty be reduced from 50% to 25% because the income involved was community property. Yet that is the essence of what the taxpayers are arguing. The argument was rejected in *Parker v. United States,* 5 Cir., 1975, 524 F.2d 479. We reject it here.

Affirmed.

1. We need not consider the Commissioner's argument that, as to 1964, Earl Lollis is collaterally estopped to deny fraud, having pled guilty to an indictment charging him, under 26 U.S.C. § 7206(1), with wilfully making and subscribing a false partnership return for that year. *See United States v. Anderson,* W.D.Ark., 1966, 254 F.Supp. 177, and *Considine v. C. I. R.,* 1977, 68 T.C. 52. *Cf. Amos v. C. I. R.,* 4 Cir., 1965, 360 F.2d 358, 359, *Moore v. United States,* 4 Cir., 1965, 350 F.2d 353, 356, modified, 1966, 360 F.2d 357; *Plunkett v. C. I. R.,* 7 Cir., 1972, 465 F.2d 299.