OCTAVIO C. BECERRA and THERESE D. DECERRA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Becerra v. Commissioner
Docket No. 16233-81.
United States Tax Court
T.C. Memo 1984-134; 1984 Tax Ct. Memo LEXIS 540; 47 T.C.M. (CCH) 1308; T.C.M. (RIA) 84134; March 19, 1984. Thomas E. O'Sullivan and Dennis G. Harkavy, for the petitioners. Dennis Brager, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Year
Deficiency in
I.R.C. 1954
Ended
Income Tax
Section 6653(b)
1973
$3,383.00
$1,691.50
1974
14,088.00
7,044.00
1975
5,651.00
2,825.50
Respondent *541 concedes that there are no additions to tax due from petitioner Therese D. Becerra. The basis for the deficiencies and for the additions to tax consists of unreported income arising out of the business of Octavio C. Becerra (petitioner) as a landscaping labor contractor. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation and exhibits thereto are incorporated herein by this reference. Petitioners were residents of Los Angeles, California, at the time they filed their petition herein. They timely filed joint individual income tax returns, using the cash method of accounting, for the years 1973, 1974, and 1975. During and prior to the years in issue, petitioner was engaged in the landscaping business. In relation to this business, he employed casual laborers, some of whom were illegal aliens. Many of these laborers demanded and received their wages in cash. Petitioner did not keep records of the cash wages paid to his employees. Petitioner did not file an employment tax return for 1970. In 1972, he was audited for the year 1970. During the course of the audit, petitioner was informed that he was required to withhold income and employment taxes *542 from the wages he paid. Petitioner did file employment tax returns for 1973, 1974, and 1975. He only withheld income and employment taxes, however, for employees paid by check. During the years in issue, petitioner received and reported gross receipts as follows: 1973
1974
1975
Gross receipts
$36,931
$83,725
$20,429
Reported gross receipts
10,259
51,005
8,853
Unreported income
$26,672
$32,720
$11,576
Cash used by petitioner for paying employees was obtained by petitioner's cashing checks received from his customers. Such checks were cashed at banks otsher than petitioner's banks because petitioner believed that he could thereby avoid having the receipts traced to him. During 1976, respondent commenced an investigation of petitioner's tax liabilities for the years 1973 through 1975. During an early interview with one of respondent's agents, petitioner was confronted with records of checks received from one of petitioner's customers and cashed by petitioner. Petitioner expressed surprise that respondent's agent was able to find checks that had been cashed and stated that he did not expect to be caught, but, if he were caught, he was willing *543 to pay the additional tax due. Petitioner stated to the agent that the proceeds of the cashed checks were used to pay day laborers. Petitioner refused, however, to identify the employees paid in cash or otherwise to cooperate with respondent in attempting to confirm petitioner's statements. During a later interview with another one of respondent's agents, petitioner stated that he realized that he had received additional amounts of income during the years in issue, but repeated his claim that the additional amounts had been paid to employees. During this interview, petitioner estimated that possibly 10 percent of the proceeds of the cashed checks were retained by him personally. He again refused to identify the employees who had received the payments, stating that even if he could remember the names of such employees, he would not disclose them because he did not want to get anybody else involved. During the interviews by respondent's agents, petitioner estimated the number of employees paid in cash at various times during the years in issue at between 2 and 25. He made statements to the effect that such employees generally worked on weekends, that they were paid about $25 *544 per day, and that his gross profit from charging his customers for the work of such employees was approximately $1 per hour. Petitioner also stated to respondent's agents that he paid such employees $3.00 per hour during 1973 and $3.50 per hour during 1974 and 1975. He further stated that he charged his customers $4.00 per hour in 1973 and $4.50 in 1974 and 1975 for the work of those laborers. In the notice of deficiency issued by respondent, no deductions were allowed for cash payments to employees. OPINION Petitioner contends that all of the cash proceeds received by him from customers' checks were paid out to employees, and that, therefore, there was no underpayment of his taxes for the years in issue. Further, petitioner argues that, assuming some insubstantial underpayment, there was no fraud. Finally, petitioner argues that, in the absence of fraud, any deficiency for the year 1973 is barred by the statute of limitations. Respondent argues that petitioner's failure to keep books and records or to cooperate with respondent in determining the amount of cash paid to employees should preclude allowance of deductions for such payments. In the alternative, respondent *545 argues that any deduction should be computed on the basis of the legal minimum wage during the years in issue, which would justify additional deductions of not more than $14,772, $7,622, and $5,967 for the years 1973, 1974, and 1975, respectively. Respondent contends that the underreporting of gross receipts, which is admitted by petitioner, constitutes clear and convincing evidence of fraud. Petitioner and witnesses called on his behalf testified to the cash payment of wages and that in no event was such payment less than $3 per hour. This testimony is uncontroverted and is credible. Because petitioner provided only estimates of the number of employees, the number of hours they worked, his gross profit, and the amount of cash retained by him, the record is inadequate for determination of the precise amount of cash wages paid to employees, even accepting petitioner's testimony on these matters. Because the inability to reconstruct the actual amount is attributable to petitioner's admitted failure to keep records and his refusal to assist respondent in obtaining more contemporary verification of petitioner's claims, this is certainly a case where the inexactitude is of the taxpayer's *546 making and should be weighed heavily against him. Petitioner was, and the Court is, however, required to take account of commercial reality and human experience. See Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Based on the entire record, by approximation we determine that petitioner is entitled to deductions not previously allowed for wages paid as follows: 1973
1974
1975
$23,000
$28,000
$9,500
These additional deductions are less than the unreported income, and taxable income was therefore understated for each of the years in issue. [1]
The 50 percent addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell,303 U.S. 391, 401 (1938). Respondent has the burden of proving, by *547 clear and convincing evidence, that some part of the underpayment for each year was due to fraud. Sec. 7454(a); [2]Rule 142(b), Tax Court Rules of Practice and Procedure. This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court.The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). A pattern of consistent underreporting of income for a number of years, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud as to each of the years. Lollis v. Commissioner,595 F.2d 1189, 1191 (9th Cir. 1979); *548 Furnish v. Commissioner,262 F.2d 727 (9th Cir. 1958); Baumgardner v. Commissioner,251 F.2d 311 (9th Cir. 1957); Otsuki v. Commissioner,supra.
The other circumstances in this case, of course, include the cashing of checks in a manner calculated to avoid discovery, the failure to keep records of the receipts and of the payments made to the employees, and the failure to report the wages paid in cash on petitioner's employment tax returns for the years in issue. Moreover, petitioner expressed knowledge of guilt to respondent's agents, admitting that he was aware that he underreported his gross receipts. We therefore conclude that underpayment of petitioner's taxes during the years in issue was due to fraud. Because we have concluded that any underpayment for the year 1973 was attributable to petitioner's fraud, the statute of limitations does not bar assessment of the deficiency or additions to tax for that year. Sec. 6501(c). Decision will be entered under Rule 155.
Footnotes
1. It appears from the record that the only underpayment of tax for 1973 will be self-employment tax. Such underpayment, however, supports imposition of the addition to tax under sec. 6653(b). See secs. 6653(c) and 6211.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩