CHESTER C. QUANTZ AND JANET M. QUANTZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Quantz v. Commissioner
Docket No. 16723-88
United States Tax Court
T.C. Memo 1990-39; 1990 Tax Ct. Memo LEXIS 39; 58 T.C.M. (CCH) 1274; T.C.M. (RIA) 90039; January 23, 1990
Richard J. Siriani, for the petitioners. Dennis G. Driscoll, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: In a statutory notice sent April 7, 1988, respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)
1979
$  9,568.50
$  4,784.25
1980
23,965.23
11,982.62
1981
5,473.48
2,736.74
Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for *41 the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are (1) whether petitioners are entitled to deductions for supplies expenses of $ 32,969.50 for 1979, $ 35,566.65 for 1980, and $ 5,882.50 for 1981; (2) whether petitioners had offsetting travel expenses during 1981; (3) whether petitioners are entitled to deductions for tools in the amount of $ 44 for 1979 and depreciation expense for tools in the amounts of $ 979 for 1979, $ 615 for 1980, and $ 440 for 1981; (4) whether petitioners are liable for additions to tax for fraud under section 6653(b); (5) whether Mrs. Quantz is an innocent spouse within the meaning of section 6013(e); and (6) whether the statute of limitations bars assessment of petitioners' tax liabilities for 1979 or 1980. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Chester C. Quantz (petitioner) and Janet M. Quantz (Mrs. Quantz) were residents of Texas at the time the petition in this case was filed. Petitioners filed joint Federal income tax returns for 1979, 1980, and 1981. At all *42 material times, Electro-Tech, Inc. (Electro-Tech) manufactured electronic component parts specifically designed for defense equipment mainly utilized by the Government. Petitioner began working for Electro-Tech in 1975 as a design engineer. His duties were to design, make test units, test, and assist in placing in production various component parts that Electro-Tech was under contract with the United States Army to produce. In February 1979, petitioner received an offer of employment from Sunstrand Corp. That offer prompted Electro-Tech to enter into a contract of employment with petitioner for the 2-year period September 30, 1978 through September 30, 1980. Under this contract, petitioner agreed to remain in the exclusive employ of Electro-Tech and to work on such engineering and test projects as might be required. In return, Electro-Tech agreed (1) to provide reasonable facilities and equipment; (2) to pay petitioner a salary of $ 28,930 per year, to increase at the same rate as inflation; (3) to provide employer-paid health insurance plus dental costs; (4) to deposit $ 12,500 to petitioner's account, in a bank of his choice, at the end of each 6-month period; and (5) to pay *43 for a retirement policy to become the property of petitioner at the conclusion of the employment period. During 1979 and 1980, Electro-Tech paid petitioner $ 22,100 and $ 18,375, respectively, in bi-weekly wages. These payments were reported on Forms W-2, Wage and Tax Statements, issued to petitioner and were reported on petitioners' Federal income tax returns for 1979 and 1980. During 1979 and 1980, Electro-Tech also paid to petitioner $ 6,823.70 and $ 10,590.84, respectively, in quarterly payments. These payments were not reported on Forms W-2 or Forms 1099 and were not reported on petitioners' Federal income tax returns for 1979 or 1980. In addition to the payments described above, Electro-Tech paid to petitioner $ 25,000 in 1979 and $ 25,000 in 1980. The payments made during 1979 and $ 12,500 of the payments made during 1980 were deposited in a joint savings account, in petitioners' names, at the Bank of Nova Scotia, Windsor, Ontario, Canada (Bank of Nova Scotia). These payments were not reported on Forms W-2 or Forms 1099 and were not reported on petitioners' Federal income tax returns for 1979 or 1980. Petitioners reported interest earned from the Bank of Nova Scotia *44 during each of the years in issue. In addition to the payments described above, Electro-Tech paid to petitioner $ 2,025.00 in 1980 and $ 10,842.58 in 1981 based on time slips submitted by petitioner to Electro-Tech. These payments were not reported on Forms W-2 or Forms 1099. Of these payments, only $ 1,815.80 was reported by petitioners on their 1981 Federal income tax return. In summary, the total payments received by petitioner from Electro-Tech and the total payments reported by petitioners on their Federal income tax returns for the years in issue were as follows: Total Received
Total Reported
1979
$ 31,823.70
$ 22,100.00
1980
37,615.84
18,375.00
1981
10,842.58
1,815.80
On October 15, 1980, Electro-Tech purchased for petitioner a single premium tax-deferred annuity life insurance policy at a cost of $ 11,176. The cost of this policy constitutes income to petitioner in 1980, and that income was not reported on petitioners' Federal income tax return. During 1981, Electro-Tech paid for an ocean cruise for petitioners at a cost of $ 5,946. Both petitioners and the president of Electro-Tech, Jack Beauchamp (Beauchamp), were *45 on the cruise. The cruise terminated in San Francisco, where petitioner and Beauchamp met with some persons that Beauchamp believed to be a potential source of future business. No business was actually conducted with such persons, however. Petitioners received capital gain in the amount of $ 11,192.89 for 1980 from the sale of V.S.I. stock, determined as follows: Gross Sales Price
$ 31,679.21
Less: Basis
$  3,696.98
Gain on Sale
$ 27,982.23
Less:
Section 1202 Deduction
$ 16,789.34
Net Capital Gain
$ 11,192.89
The gain was not reported on petitioners' tax return for 1980. The proceeds from the sale of the V.S.I. stock were deposited in a joint investment account, in petitioners' names, at Wm. C. Rooney & Co., Detroit, Michigan. Mrs. Quantz was a signatory on the account at the Bank of Nova Scotia into which substantial amounts of petitioners' unreported income were deposited. Mrs. Quantz personally withdrew $ 12,500 from that account on May 7, 1980. Petitioner prepared the joint Federal income tax returns for the years in issue. In June 1982, during the course of an audit of the returns for 1980 and 1981, a revenue agent interviewed petitioners. *46 Petitioner stated falsely that the moneys deposited in the Bank of Nova Scotia account were proceeds from sale of his residence. Petitioner admitted during that interview that he had not reported all of the income he received from Electro-Tech during 1980 and 1981, but he attributed those omissions to his failure to keep records. Mrs. Quantz was present during the interview of petitioner and did not contradict his statements. In January 1983, during the course of a criminal investigation, petitioner asserted for the first time that he had incurred unreimbursed supplies expense that offset unreported income received from Electro-Tech. On June 13, 1983, petitioners executed a power of attorney, appointing Richard J. Siriani (Siriani) as their representative with respect to their Federal income tax returns for 1979, 1980, and 1981. On May 7, 1985, Siriani met with a special agent regarding petitioners' tax liabilities for those years. At that time, Siriani provided the agent with a schedule of supplies expenses allegedly incurred by petitioner in performing services for Electro-Tech. Siriani stated that petitioner had prepared the schedule in 1983 using catalogues to estimate *47 the prices paid for the supplies. The catalogues were not provided to the agent. The schedule of supplies prepared by petitioner listed 28 suppliers, only 10 of which could be located by the investigating special agent. Supplier records failed to corroborate petitioner's claims. Petitioner was generally authorized to use available parts in Electro-Tech's inventory or to charge purchases to charge accounts maintained by Electro-Tech with various suppliers. Electro-Tech maintained charge accounts through the years in issue with at least five of the suppliers identified on petitioner's schedule. On March 25, 1986, petitioner was indicted under section 7201 for willful evasion of Federal income taxes for 1979, 1980, and 1981. On June 12, 1986, petitioner entered a plea of guilty to willful evasion of Federal income taxes for 1980, and the remaining counts were dismissed. OPINION Petitioners do not deny that they had unreported income during the years in issue. They contend that they are entitled to offsetting deductions and that any underpayment of tax was not due to fraud. They also contend that the statute of limitations bars assessment of the liabilities for 1979 and *48 1980. Petitioners acknowledge that, because the return for 1981 omitted more than 25 percent of petitioners' gross income and was filed within 6 years of the date of the statutory notice, section 6501(e)(1)(A) permits assessment for that year. Respondent, of course, has the burden of proving fraud and, in this case, that assessment is not barred by the statute of limitations. Petitioners, however, have the burden of proving deductions that would offset the unreported income now stipulated, other deductions now claimed, and that Mrs. Quantz qualifies for treatment as an innocent spouse. As to the first matter, petitioners maintain that Mr. Quantz believed that the expenses offset the unreported income. As to the latter item, petitioners must show that Mrs. Quantz did not know or have reason to know of the unreported income. It is unlikely that the belief or the lack of knowledge of a taxpayer could be shown without the testimony of the person available to testify whose belief or knowledge is crucial to the issue. Neither petitioner nor Mrs. Quantz testified at trial. The Court specifically inquired whether counsel for petitioners wished to explain the absence of petitioners, but *49 he stated that he did not. Under these circumstances, the Court draws a strong inference that petitioners' testimony would not be favorable to their position or their testimony would be seriously damaged by cross-examination. In any event, petitioners chose to rely solely on the testimony of Beauchamp. Beauchamp, however, could provide only evidence that the items produced by petitioner were complex, that petitioner produced the items to the satisfaction of Electro-Tech, that Electro-Tech paid for them, and that the claimed costs of production were reasonable. He could not produce any direct evidence of cost and assumed that all proper costs were reimbursed to petitioner. He certainly did not and could not provide any evidence of the state of mind of petitioner or of Mrs. Quantz at the time their tax returns were filed. For the reasons discussed below, we conclude that petitioners have not met their burden of proof as to any issue, and respondent has met his burden of proving fraud. The proof of fraud also negates petitioners' statute of limitations claim. Supplies Expense
Petitioner asserts that he is entitled to offset deductions for supplies set forth on his schedule *50 because they were incurred as ordinary and necessary expenses in carrying on his business of being a design engineer. Respondent stipulated to the admissibility of schedules prepared by petitioner but not to the accuracy or correctness of the information set forth in them. No evidence that petitioner actually incurred the expenses claimed was produced. Petitioner relies on the testimony of Beauchamp, who stated that petitioner was permitted to purchase the materials he needed to build the test units with his own funds or by using Electro-Tech's credit accounts. Beauchamp expressed the opinion that the amounts claimed as expenses were reasonable. Beauchamp further testified, however, that any amounts petitioner personally expended for supplies were reimbursed to petitioner either directly or indirectly through increased costs petitioner reported to Electro-Tech. No evidence of itemization of expenses to Electro-Tech was produced. In any event, business expenses incurred by an individual for which a right of reimbursement exists are not deductible under section 162. Lucas v. Commissioner, 79 T.C. 1, 7 (1982), and cases cited therein. Petitioner failed to maintain *51 records of his purported purchases and did not claim them on the returns he filed for the years in issue. He mentioned them for the first time in January 1983, over 6 months after he was interviewed by a revenue agent auditing his returns for 1980 and 1981. Petitioner asserts in his brief that previous counsel had records that support his claimed deductions, but no documents or testimony to that effect were offered into evidence. Petitioner relies on our opinions in Kellner v. Commissioner, T.C. Memo. 1976-72, affd. without published opinion 553 F.2d 93 (2d Cir. 1977), and H.H. Mink & Son Bag Co. v. Commissioner, T.C. Memo. 1970-177, for the proposition that lack of individual documentation is not fatal to claimed business deductions. In each of those cases, however, we allowed the amounts claimed based on credible testimony of the taxpayers. As indicated above, we have no testimony from petitioner in the record in this case. His schedule was allegedly prepared by using price quotes from catalogues, but the catalogues have not been identified or offered in evidence. The schedule lists 28 suppliers, only 10 of which could be located. *52 Representatives of those 10 testified at trial and failed to provide any corroboration of petitioner's claims other than a single receipt for $ 1.03. Yet petitioner claims expenses of $ 32,969.50 incurred in 1979, $ 35,566.65 in 1980, and $ 5,882.50 in 1981. The schedule lacks credibility, and we have no reasonable basis on which to make any approximation of expenses actually incurred and deductible by petitioner. Offsetting Travel Expenses
Respondent determined that the cost of a cruise paid for by Electro-Tech was income to petitioners. Petitioner suggests that he is entitled to exclude one-half of the cost of the cruise because it was business related. Petitioner has not, however, substantiated the business purpose of the cruise. Beauchamp testified that he and petitioners went on a cruise that terminated in San Francisco and "visited some people there that we were investigating doing some business [with] in the area." This testimony is totally inadequate to substantiate the business purpose of the cruise. Sec. 274(d); see sec. 1.162-2(a), Income Tax Regs.; McCann v. United States, 696 F.2d 1386, 1388 (Fed. Cir. 1983). Petitioner also contends, *53 without any evidentiary support, that a $ 1,422 payment made to him by Electro-Tech in 1981 constituted reimbursement of air fare for a business trip to Israel. Beauchamp testified that petitioner made such a trip for Electro-Tech. There is no evidence, however, of expenses actually incurred by petitioner or other substantiation as required by section 274(d). The unsubstantiated deduction cannot, therefore, be allowed, even assuming that the payment was made to petitioner for the purpose he asserts. Tools and Other Deductions
Petitioner asserts that he is entitled to deductions for tool expense and tool depreciation and states in his brief that respondent has decided to allow tool expense for 1979 and tool depreciation for all years. The record does not support any such concession by respondent. The only evidence concerning tool expense is a schedule similar to, and containing the same defects as, petitioner's schedule of alleged supplies expense. Additions to Tax for Fraud
Respondent contends that petitioners' underpayment of income tax for the years in issue is due to fraud. Section 6653(b), as in effect for the years in issue, provides an addition to tax of *54 50 percent of the amount of the underpayment if any part of the underpayment is due to fraud. The 50-percent addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Respondent has the burden of proving by clear and convincing evidence that there is an underpayment and that some part of an underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). *55 Petitioner is collaterally estopped to deny fraud for 1980 because he has been convicted under section 7201 for that year. Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68, 74-75 (1964). Regardless of collateral estoppel, however, respondent has proven fraud on the part of petitioner for each year. A consistent pattern of unreporting of income for a number of years, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud as to each of the years. Holland v. United States, 348 U.S. 121, 129 (1954); Lollis v. Commissioner, 595 F.2d 1189, 1191 (9th Cir. 1979); Otsuki v. Commissioner, 53 T.C. 96 (1969). Once respondent proves unreported income, even in a criminal context, petitioner has the burden of proving that his deductions offset the unreported income. United States v. Shavin, 320 F.2d 308, 310-311 (7th Cir. 1963); Elwert v. United States, 231 F.2d 928, 933-936 (9th Cir. 1956). Petitioner consistently underreported income he received from Electro-Tech for the years in issue. He deposited some of the payments he received *56 in the Bank of Nova Scotia, reporting only interest on that account. Separate bank accounts and other means of concealing assets are evidence of fraud for criminal or civil purposes. Spies v. United States, 317 U.S. 492, 499 (1943); United States v. Conley, 826 F.2d 551, 558 (7th Cir. 1987). Petitioner asserts that the Bank of Nova Scotia account was not an attempt to conceal assets because he reported the interest income from that account on his returns for the years in issue. Failure to take additional steps that would have made discovery less likely does not negate fraudulent intent. When questioned by an Internal Revenue Service agent about the Bank of Nova Scotia deposits, petitioner claimed that the funds were derived from the sale of his residence, a statement directly controverted by the evidence. During the audit, petitioner conceded that he had unreported income for the years in issue. Seven months later he asserted for the first time that he had unreimbursed expenses that offset the unreported amounts. Petitioner has never explained his false and belated claims. Petitioner contends that, after applying the additional expenses and *57 deductions that he claims, his unreported income would not exceed 25 percent of the amount of gross income stated in his returns for the years in issue. Even if his computation is correct, it is immaterial. In their brief, petitioners have confused the provisions of section 6501(e)(1)(A), establishing a 6-year period of limitations when 25 percent of gross receipts is omitted from a return, with the open-ended period for assessment in cases of fraud, discussed below. On consideration of the entire record, respondent has satisfied his burden of proving fraud on the part of petitioner for 1979, 1980, and 1981 by clear and convincing evidence. Petitioner is thus liable for the additions to tax under section 6653(b) for each of those years. Respondent also argues that Mrs. Quantz is liable for the additions to tax for fraud, asserting that she (1) fraudulently failed to report income received by petitioners; (2) was aware of the unreported amounts as indicated by her withdrawals of funds from the joint bank account at the Bank of Nova Scotia; and (3) failed, during the course of interviews at which she and petitioner were present, to correct the false statements made by petitioner. *58 In the absence of affirmative indications of her intent, however, we are unable to conclude that the evidence of fraud is clear and convincing as to Mrs. Quantz. Cf. Jones v. Commissioner, 259 F.2d 300, 303 (5th Cir. 1958). She is not liable for the additions to tax for fraud. Innocent Spouse
Mrs. Quantz claims that she is entitled to relief as an innocent spouse under section 6013(e). Under that section, she must prove that she did not know, and had no reason to know, that there was "a substantial understatement of tax attributable to grossly erroneous items of one spouse." Sec. 6013(e)(1)(B), (C). She must also show that, taking into account all other facts and circumstances, it is inequitable to hold her liable for the deficiency in tax. Sec. 6013(e)(1)(D). See Purcell v. Commissioner, 86 T.C. 228, 241 (1986), affd. 826 F.2d 470 (6th Cir. 1987); Sonnenborn v. Commissioner, 57 T.C. 373, 381-383 (1971). Petitioners argue that Mrs. Quantz did not actively partake in her husband's business and financial affairs and, accordingly, did not know or have reason to know of the payments he received from Electro-Tech. *59 Without her testimony, we cannot find that Mrs. Quantz lacked knowledge of the unreported income. Moreover, her unsupported assertion is directly controverted by the evidence. A substantial amount of money received from Electro-Tech was deposited in a joint bank account at the Bank of Nova Scotia, and she personally withdrew at least $ 12,500 from that account. The unreported income from the sale of stock was also deposited to a joint investment account. There is certainly no basis for a conclusion that it would be inequitable to hold Mrs. Quantz liable for the deficiency in income tax on petitioners' joint returns. Statute of Limitations
Section 6501(c)(1) provides that "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time." Respondent must prove fraud in each year for which he seeks to avoid the bar of the statute of limitations. Shaw v. Commissioner, 27 T.C. 561, 570 (1956), affd. 252 F.2d 681 (6th Cir. 1958). Where fraud is proven against a taxpayer who files a joint return with his or her spouse, *60 the bar of the statute of limitations is lifted, and both spouses may be held liable for any deficiency. Benjamin v. Commissioner, 66 T.C. 1084, 1100 (1976), affd. 592 F.2d 1259 (5th Cir. 1979); Vannaman v. Commissioner, 54 T.C. 1011, 1018 (1970). For this purpose, however, respondent may not rely on collateral estoppel against petitioners. Rodney v. Commissioner, 53 T.C. 287, 310-311 (1969). As indicated above, we conclude that respondent has established fraud on the part of petitioner for each of the years in issue, independent of collateral estoppel. The statute of limitations, therefore, does not bar assessment of any deficiency. Because of concessions by respondent, Decision will be entered under Rule 155.