TOM OWEN McCALLSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McCallson v. Commissioner
Docket No. 22601-92
United States Tax Court
T.C. Memo 1993-528; 1993 Tax Ct. Memo LEXIS 534; 66 T.C.M. (CCH) 1316; November 16, 1993, Filed *534 Decision will be entered under Rule 155. Tom Owen McCallson, pro se. For respondent: James R. Robb. CHIECHI
CHIECHI
MEMORANDUM OPINION CHIECHI, Judge: Respondent determined a deficiency in, and an addition under section 6662(a) [1] to, petitioner's 1990 Federal income tax in the amounts of $ 41,291.26 and $ 8,258.25, respectively. The issues [2] for decision are: (1) Is petitioner entitled to deduct for 1990 any of the expenses he claimed on his Schedule C under the category legal and professional services in addition to those allowed by respondent? We hold that he is entitled to deduct the amounts determined below. *535 (2) Did petitioner fail to report as gross income for 1990 a $ 953 dividend which he received from the Alaska Permanent Fund? We hold that he did not. (3) Is petitioner liable for 1990 for the addition to tax under section 6662(a)? We hold that he is not liable except to the extent of the portion of the underpayment for that year attributable to petitioner's claiming as an expense on his Schedule C an alleged $ 20,750 payment to his brother. Background
Some of the facts have been stipulated and are so found. Petitioner resided in Bethel, Alaska, at the time he filed the petition herein. In January 1990, petitioner and his brother, Kim McCallson (Kim), purchased for $ 5,000 an automobile repair business known as Delta Automotive (Delta). Hereinafter, for convenience, the automobile repair business operated by petitioner during 1990 will sometimes be referred to as Delta's business or Delta's operations. Petitioner and Kim worked as mechanics in that business. Kim left the business in October or November 1990. Petitioner and/or Kim obtained a receipt for each of the expenses incurred during 1990 in operating the automobile repair business. They also maintained a number *536 of separate ledgers for recording daily gross receipts and for recording the various types of expenses incurred in running that business. For example, there was a parts ledger, a tools ledger, and an advertising ledger. The expense-related ledgers were prepared on a daily basis directly from the receipts for the expenses incurred each day. Petitioner closed Delta's operations in December 1990. Petitioner made arrangements to store, among other things, property relating to Delta's business at a vacant lot (land site) situated a few miles from the location of the shop where petitioner conducted that business. Petitioner placed all of the books and records relating to Delta's operations, including canceled checks and ledgers, in a box and moved the box, along with certain other property of petitioner, to the land site. He placed the box and the other property on pallets and covered them with a tarp. Sometime prior to April 15, 1991, petitioner obtained the ledgers from the land site and used them to prepare his personal income tax return for the year 1990. Petitioner had not operated a business prior to 1990, and he found the process of completing Schedule C to be difficult and *537 confusing. Petitioner reported all of the receipts and claimed all of the expenses of Delta's operations on Schedule C of his 1990 return. Kim did not claim any of that income or expense. After completing the preparation of his 1990 return, petitioner returned the ledgers to the box located at the land site. In October or November 1991, the owner of the land site caused all of petitioner's property, including the books and records relating to Delta's operations, to be pushed by a snow plow into a ditch. In November 1991, petitioner visited the land site and observed the damage that had been done to his property. Petitioner made no attempt at that time to collect any of the records relating to Delta's business. During the winter of 1991-1992, the Internal Revenue Service (the Service) requested that petitioner provide copies of the books and records with respect to Delta's operations for the year 1990. Petitioner spoke to an employee of the Service and explained the events surrounding, and the condition of, those books and records. Petitioner testified that he was advised by that Service employee to collect the following spring as many of those books and records as possible *538 and to send them to the Service. In the spring of 1992, petitioner and two friends went to the land site and attempted to recover as many records as possible. Although some of those records were still in the box, the majority of them were scattered across the land site. Many of the records were falling apart. The dates and amounts on many of the records were illegible. Petitioner asked his friends to pick up all of the records which were legible or which were not falling apart. Petitioner and his friends recovered some of the records relating to Delta's 1990 operations, and petitioner sent them to the Service. A notice of deficiency for 1990 was issued to petitioner before the Service received those records from him. In May 1993, petitioner returned to the land site for the purpose of obtaining evidence that his records were destroyed. He took several photographs there, which are part of the record here. While at the land site, petitioner recovered a checkbook and a checkbook register which listed some of the checks used to pay certain of the expenses incurred during 1990 with respect to Delta's operations. The principal dispute in this case involves expenses that petitioner *539 claimed under the category legal and professional services on Schedule C of his tax return for 1990. [3] The entire amount of those expenses (namely, $ 58,719.82) was disallowed by respondent in the notice of deficiency. Respondent now agrees that petitioner is entitled to deduct the following amounts claimed by petitioner under legal and professional services on his Schedule C: Expense Item Deduction Allowed
Laundry
$   181.10
Tool depreciation (basis of $ 2,315.07)
[4] 628.00
Car depreciation (basis of $ 1,500)
300.00
Fuel
2,002.64
Insurance
1,481.00
Miscellaneous Supplies
275.27
*540 Thus, there remains in dispute $ 50,964.74 of expenses claimed by petitioner under legal and professional services. In addition, an issue exists as to whether petitioner did in fact report on his 1990 return a $ 953 dividend which he admitted he received from the Alaska Permanent Fund. Finally, we must address the question whether petitioner is liable for the accuracy-related penalty under section 6662(a). Discussion
Petitioner bears the burden of proving that respondent's determinations in the notice of deficiency are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). 1. Schedule C Expenses
Petitioner admitted at trial that the expenses claimed under the category legal and professional services were not incurred for either of those purposes. Petitioner explained that in preparing his Schedule C he did not know where to claim the expenses listed on some of the ledgers he maintained for Delta's operations. Petitioner testified that he claimed those amounts under legal and professional services because he believed that any automobile repair service he provided, such as towing, was related to a professional service. *541 Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving that he is entitled to any deductions claimed. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). If certain claimed expenses are not adequately substantiated, we are generally permitted to estimate those expenses when we are convinced from the record that they were incurred by the taxpayer and we have a basis upon which to make an estimate. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930); see also Lollis v. Commissioner, 595 F.2d 1189, 1190 (9th Cir. 1979), affg. T.C. Memo. 1976-15. Respondent argues that the Court should not apply the Cohan rule in the instant case because petitioner failed to present documentary evidence which was available to him. Respondent asserts that many of the business records relating to Delta's operations were not destroyed and are still lying on the ground at the land site. Respondent also contends that we should refuse to apply the Cohan rule because petitioner could have obtained from his bank duplicate copies *542 of the checks he used to pay expenses incurred in Delta's operations. Having observed petitioner's appearance and demeanor at trial, we found him to be honest, forthright, and credible. We are satisfied from petitioner's testimony that he and his friends collected all of the records which they believed could be used to substantiate the deductions claimed by petitioner. Petitioner's testimony as to the general state of his records was corroborated by photographs of the land site, which showed some of the records petitioner left at the land site. Those records appeared to be substantially deteriorated, partially covered with sand or dirt, and scattered across a fairly large area. We do not believe petitioner's failure to produce those records at trial prevents the Court from applying the Cohan rule to his claimed expenses. Nor do we believe petitioner's failure to obtain from his bank copies of the checks used to pay certain expenses incurred in Delta's operations precludes the Court from applying the Cohan rule. Petitioner testified that a majority of the expenses incurred in Delta's business were paid in cash. He also candidly admitted that it did not occur to him *543 to obtain from the bank copies of the checks. Nevertheless, petitioner failed to produce copies of the checks used to pay some of the expenses incurred in Delta's operations that he could have obtained copies of from his bank, and the Court will not accept in their entirety the amounts petitioner claimed at trial were spent in those operations. We now turn to the specific expenses claimed by petitioner under legal and professional services about which he testified at trial and as to which we will apply the principles of Cohan v. Commissioner, supra. Petitioner testified that he spent approximately $ 8,000 during 1990 on tools for which respondent has not allowed any depreciation deductions. We find that petitioner spent $ 4,000 for such tools and that he is entitled to a depreciation deduction for 1990 for those tools in the amount of $ 571.43. [5]
*544 Petitioner testified that he purchased a new air compressor in 1990 for approximately $ 1,400. We find that petitioner spent $ 700 for the air compressor and that he is entitled to a depreciation deduction for 1990 for the air compressor in the amount of $ 100. [6]
Petitioner testified that in 1990 he purchased a pickup truck for between $ 1,200 to $ 1,500 and that he converted the pickup truck into a tow truck. Petitioner further testified that, in converting the pickup truck into a tow truck, he purchased a steel bar for between $ 1,000 to $ 1,200 and a yellow strobe light for approximately $ 100. We find that petitioner spent $ 1,200 for the truck, steel bar, and strobe light. We conclude that petitioner is entitled to a depreciation deduction for 1990 for *545 the tow truck in the amount of $ 240. [7]
Petitioner and Kim purchased the automobile repair business known as Delta Automotive for $ 5,000 in January 1990. [8] Petitioner explained that, in return for the purchase price, he and Kim received a small air compressor, a box of miscellaneous tools, a jack, some jack stands, a waste oil burner, a tire machine, and some spare parts. There is no basis in the record upon which we can estimate what portion of the $ 5,000 should be allocated to the various items which petitioner testified he acquired for the $ 5,000 purchase price. [9] Thus, we are unable to conclude what, if any, portion of the $ 5,000 may be deducted by petitioner. Accordingly, we conclude that petitioner has failed to satisfy his burden of proving that he is entitled to depreciation *546 deductions with respect to the property received when the automobile repair business was purchased. Vanicek v. Commissioner, 85 T.C. 731, 742 (1985). Petitioner also testified that Kim withdrew approximately $ 20,750 from the business and that he deducted this amount under legal and professional services on his Schedule C. Petitioner's testimony concerning the $ 20,750 payment to Kim was vague and confusing. Petitioner first testified that Kim received the $ 20,750 as compensation for the services he rendered for Delta's business. Petitioner then contradicted *547 this testimony by claiming that Kim received the $ 20,750 as Kim's share of the profits of Delta's operations and that the $ 20,750 was not given to Kim as compensation. Petitioner further testified that Kim withdrew the money to buy tools to be used in the business, but that those tools belonged to Kim and not to the business. Petitioner submitted into evidence a Form 1065 (U.S. Partnership Return of Income) and a Schedule K-1 (Partner's Share of Income, Credits, Deductions, Etc.) for 1990 which he claimed Kim filed with respect to Delta's operations. The Schedule K-1 lists $ 20,750 as both the amount spent in those operations during 1990 for the purchase of new inventory as well as Kim's share of the ordinary loss shown on that schedule. We cannot conclude on this record whether or not petitioner is entitled to deduct any portion of the $ 20,750 payment to Kim. We hold, therefore, that petitioner has failed to carry his burden of proving that he is entitled to deduct any part of that amount. Id.
Petitioner was unable to remember with any particularity any of the other expenses he claimed on his Schedule C under legal and professional services. Petitioner admitted that *548 most of the items he claimed under legal and professional services should have been depreciated. On this record, we have no basis upon which to estimate the extent to which petitioner is, and conclude therefore that he is not, entitled to deduct the remainder of the amounts claimed on his Schedule C under legal and professional services. 2. Dividend from the Alaska Permanent Fund
Respondent determined that petitioner had unreported income in the amount $ 953 which he received as a dividend from the Alaska Permanent Fund. Petitioner testified at trial that the $ 953 dividend was reported as a gross receipt on Schedule C of his 1990 return. We find petitioner's testimony totally credible and conclude that the $ 148,001.14 in gross receipts reported by petitioner on Schedule C of his 1990 return included the $ 953 dividend petitioner received from the Alaska Permanent Fund. 3. Addition to Tax under Section 6662(a)
Respondent determined that petitioner is liable for the accuracy-related penalty under section 6662(a). Section 6662 imposes a 20-percent addition to tax on the portion of the underpayment attributable to any one of various factors, including negligence *549 and substantial understatement of income tax. See Ypsilantis v. Commissioner, T.C. Memo. 1992-644. A substantial understatement exists for the taxable year if the amount of the understatement of tax exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Sec. 6662(d)(1). Taking into account the agreements of the parties and the holdings above, we find that petitioner's understatement of tax exceeds both 10 percent of the tax required to be shown on his return and $ 5,000. However, section 6664(c)(1) provides that the addition to tax under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position with respect to that portion and the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith within the meaning of section 6664(c)(1) is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort *550 to assess the taxpayer's proper tax liability. Id. The regulations under section 6664 specifically provide: Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge and education of the taxpayer. * * * [Id.]
Based on the entire record in this case, we conclude that circumstances exist, including the circumstances surrounding the condition of petitioner's books and records for 1990, that indicate reasonable cause and good faith on the part of petitioner within the meaning of section 1.6664-4(b)(1), Income Tax Regs., as to all items contributing to his underpayment except the $ 20,750 that allegedly was paid to Kim during 1990 and that petitioner included as an expense on his Schedule C for that year. We believe petitioner, who had no technical training in the tax law and who had not operated a business before 1990 for which he was required to complete Schedule C, simply did not know that many of the otherwise allowable expenditures about which he testified and which he claimed under legal and professional services should have been claimed under a different *551 category of expense on Schedule C. Nor did he understand that many of those expenditures should not have been expensed and were either depreciable or not deductible at all (e.g., the spare parts and tire machine which petitioner received as part of the purchase of Delta's business and which were sold in 1990; see supra note 9). Consequently, we conclude that petitioner is not liable for the accuracy-related penalty under section 6662(a) on any portion of his 1990 underpayment attributable to such expenditures. Moreover, upon the basis of the total record here, we do not believe that petitioner should be held liable for the addition to tax under section 6662(a) for any portion of his underpayment attributable to any other expenditures not allowed by the Court except the alleged $ 20,750 payment to petitioner's brother Kim. With respect to this alleged expenditure, petitioner's testimony was vague, confusing, and contradictory and did not provide us with any basis upon which to conclude that there was reasonable cause for his deduction of that payment or that he acted in good faith in claiming it. Accordingly, we hold that petitioner is liable for the accuracy-related penalty *552 under section 6662(a) only on the portion of his underpayment for 1990 that is attributable to his deduction of the $ 20,750 allegedly paid to his brother Kim. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as in effect for the year at issue. Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent determined in the notice of deficiency that petitioner is liable for self-employment tax for the year 1990. Petitioner bears the burden of proving that this determination is erroneous. Rule 142(a). Neither petitioner nor respondent addressed the issue of self-employment tax on brief. However, respondent did indicate at trial that the amount of petitioner's self-employment tax could be determined mechanically once the Court decided the other issues in this case. We conclude that petitioner has conceded the self-employment tax issue. See Rybak v. Commissioner, 91 T.C. 524, 566↩ (1988).
3. The parties stipulated that petitioner is entitled to deduct the entire amount he claimed on his Schedule C for the categories cost of goods sold, rental-other, and utilities. In addition, the parties stipulated that petitioner is entitled to deduct $ 278.65 in lieu of a $ 1,200 expense claimed by petitioner on his Schedule C under "other".↩
4. In the stipulation of facts, respondent agreed that petitioner is entitled to a depreciation deduction equal to one-fifth of the $ 1,072 petitioner spent on certain tools in 1990. Respondent conceded on brief that petitioner is entitled to an additional depreciation deduction equal to one-third of the $ 1,243.07 petitioner spent on certain other tools in that year.↩
5. Sec. 168(a) provides that the depreciation deduction for tangible property shall generally be determined by using the applicable depreciation method, the applicable recovery period, and the applicable convention. We conclude that petitioner's depreciation deduction with respect to his $ 4,000 expenditure on tools is properly computed by applying the 200-percent declining balance method, sec. 168(b)(1), a seven-year recovery period, sec. 168(c)(1), (e)(3)(C)(ii), and (i)(1), and the half-year convention, sec. 168(d)(1).↩
6. In computing the depreciation deduction for the air compressor, we applied the 200-percent declining balance method, sec. 168(b)(1), a seven-year recovery period, sec. 168(c)(1), (e)(3)(C)(ii), and (i)(1), and the half-year convention, sec. 168(d)(1).↩
7. In computing the depreciation deduction for the tow truck, we applied the 200-percent declining balance method, sec. 168(b)(1), a five-year recovery period, sec. 168(c)(1) and (e)(3)(B)(i), and the half-year convention, sec. 168(d)(1).↩
8. Respondent concedes on brief that petitioner and Kim purchased Delta for approximately $ 5,000.↩
9. In any event, petitioner testified that he sold the spare parts and the tire machine during the year 1990. Under sec. 168(d)(1), the spare parts and the tire machine are treated as being placed in service and disposed of at the midpoint of the year 1990. Accordingly, no depreciation would be allowed for that property.↩