KENNETH W. GUENTHER AND MARVA GUENTHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Guenther v. Commissioner
Docket No. 967-84
United States Tax Court
T.C. Memo 1993-82; 1993 Tax Ct. Memo LEXIS 87; 65 T.C.M. (CCH) 2046; March 10, 1993, Filed *87 For Kenneth W. Guenther, petitioner: Carlton P. Loennig. For respondent: Gerald W. Douglas. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Addition to Tax
Year
Deficiency
Sec. 6653(b)
1978
$ 14,603
$ 7,301
1979
41,479
20,740
Petitioners [1] *88 and respondent have agreed to deficiencies of $ 7,402 and $ 27,255 for 1978 and 1979, respectively. The two issues remaining for decision are (1) whether petitioner Kenneth W. Guenther is liable for the additions to tax for fraud pursuant to section 6653(b)[2] for 1978 and 1979, and (2) whether respondent is barred by the statute of limitations from assessing and collecting petitioners' Federal income taxes for 1978. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Background
Kenneth W. and Marva Guenther (collectively referred to as petitioners) resided in Portland, Oregon, when they filed their petition in this case. At the time of trial they were legally divorced. They have a daughter, Lisa Guenther. After filing Forms 2688, Application for Extension of Time to File, petitioners timely filed joint 1978 and 1979 Federal income tax returns on October 14, 1979, and October 15, 1980, respectively. Respondent mailed a statutory notice of deficiency, dated October 13, 1983, to petitioners regarding their 1978 and 1979 taxable years. In 1950, Kenneth W. Guenther (petitioner) received a bachelor of science degree in forestry and a master of science degree in forest products from Michigan State College. He later took *89 additional classes concerning forest products. During the years in issue, petitioner was active in purchasing and selling real estate. He also bought and sold stocks in his individual capacity. Marva Guenther (Mrs. Guenther) considered petitioner to be a sophisticated and successful businessman and investor. However, she had no firsthand knowledge of any of petitioner's business dealings or investments. Mrs. Guenther was not employed during 1978 and 1979. Petitioner read several publications in order to educate himself and to improve his knowledge about tax laws. These publications included the Wall Street Journal, Barron's, Forbes, and Fortune. In 1978, he subscribed to a publication entitled Tax Angles. Petitioners deducted the cost of this publication on their 1978 joint Federal income tax return. Petitioner subscribed to this publication for the specific purpose of becoming more aware of tax matters. Petitioner did not maintain adequate books and records of his financial transactions during 1978 and 1979. Georgia Pacific Corp.
During the years in issue, petitioner worked as a marketing and management executive at the Georgia Pacific Corp. (Georgia Pacific) in *90 Portland, Oregon. He also served as general manager for Georgia Pacific's new products development department. Petitioner assisted in locating, developing, and marketing company products. While with Georgia Pacific during 1978 and 1979, petitioner supervised and managed a staff of junior executive employees. His duties included discussing, reviewing, and approving travel expenses claimed and submitted by junior employees of Georgia Pacific. Petitioner was also required to do a substantial amount of travel for Georgia Pacific and submitted reimbursement forms provided by the company with respect to his business expenses. He was reimbursed by Georgia Pacific for some of these travel expenses. These reimbursements were not included as income on petitioners' 1978 and 1979 Federal income tax returns. In 1978 and 1979, petitioner had two loans outstanding at the First National Bank of Oregon in Portland. Petitioner had borrowed these funds to purchase stock in a Georgia Pacific stock purchase plan. Petitioner voluntarily left Georgia Pacific in 1980. N.W. Frontier Co. Partnership
During the years in issue, petitioner was an equal partner in the N.W. Frontier Co. Partnership *91 (Frontier Partnership). His partner was John Slothower. The Frontier Partnership was involved in real estate, and owned three or four apartment houses in 1978. The Frontier Partnership filed partnership tax returns for taxable years 1978 and 1979. Petitioner did not participate in preparing and maintaining the partnership books and records. Tangent Development Corp.
Petitioner was the sole shareholder of Tangent Development Corp. (Tangent Development). Tangent Development owned rental properties and also held stocks. In 1979, Tangent Development maintained a stock account in its own name with the brokerage firm of Black and Co., Inc. (Black and Co.). In addition, petitioner maintained a stock account in his individual name with Black and Co., as well as another individual account with the brokerage firm of Somers, Grove, and Co. Claimed Business, Investment, Travel, and Entertainment Expenses
a. Hawaii -- 1978 and 1979
Petitioners took vacation trips to Hawaii in 1978 and 1979. Their daughter, Lisa, accompanied them on these trips. In 1978 petitioners were accompanied to Hawaii by their friends, Paul and Maxine Roscoe. While in Hawaii, the Roscoes saw *92 petitioners every day and ate dinner with them. The Roscoes did not engage in any business discussions while socializing with petitioners in Hawaii. The Roscoes did not go to Hawaii with petitioners for any business purpose; their intent was to take a vacation. It was Mrs. Roscoe's impression that petitioners went to Hawaii in 1978 for purposes of taking a vacation. Mrs. Guenther did not go to Hawaii for any business purpose. While in Hawaii during 1978 and 1979, she went sunbathing and sightseeing. Petitioner engaged in many recreational activities in Hawaii, including sightseeing, sitting on the beach, playing tennis, and hiking with his friend, Mr. Roscoe. While on their trips to Hawaii during the years in issue, Mrs. Guenther was not aware of any business activities petitioner may have engaged in, nor did she know if he ever engaged in business activities on these trips. Petitioners did not have any investments in their individual capacity in Hawaii at the time of their 1978 and 1979 vacations. Nor did they acquire any investments of any kind in Hawaii after these trips. Petitioners do not have any records and did not contemporaneously keep records of any alleged business *93 dealings while in Hawaii. b. Sun Valley, Idaho -- 1978 and 1979
Petitioners took trips to Sun Valley, Idaho, in 1978 and 1979. Sun Valley is a ski resort, and petitioners skied during these trips. Petitioners' friends, the Roscoes, accompanied them to Sun Valley in 1978. The Roscoes went to Sun Valley to take a vacation and not for any business purpose. They socialized and ate dinner with petitioners every day. It was Mrs. Roscoe's impression that petitioners went to Sun Valley in 1978 for purposes of taking a vacation. While in Sun Valley, Mrs. Guenther did not have any business dealings with the Roscoes. She was not aware of any business activities petitioner may have engaged in, nor did she know if he ever engaged in business activities on these trips. Petitioners did not have any individual investments in Sun Valley in 1978, or at any time thereafter. They have never provided any records or documents evidencing any alleged business dealings while in Sun Valley during 1978 and 1979. c. Sun River, Oregon -- 1979
During 1979, petitioners traveled to Sun River, Oregon. They were accompanied by their daughter, Lisa. She went to Sun River with her parents for *94 a vacation, and not for any business purpose. Petitioners have not provided any records or documents evidencing any business dealings or activities while in Sun River during 1979. d. Europe -- 1978
Petitioners traveled to Europe in 1978. While in Europe, petitioners went sightseeing and engaged in other tourist activities. Mrs. Guenther went to Europe for vacation purposes only. She was not aware of any business activities petitioner may have engaged in while in Europe, nor did she know if he ever engaged in business activities on this trip. Petitioners did not have any individual investments in Europe in 1978, or at any time thereafter. They have failed to provide any records or documents evidencing any alleged business dealings or activities while in Europe during 1978. e. Petitioners' 1978 and 1979 Tax Returns
On their 1978 and 1979 joint Federal income tax returns, petitioners claimed business, investment, travel, and entertainment expenses in the respective amounts of $ 49,969 and $ 13,902. Respondent has allowed $ 15,949.45 for 1978 and $ 7,184.73 for 1979. The remaining amounts of $ 34,019.55 and $ 6,717.27 are in dispute for purposes of the civil fraud *95 issue. The disallowed expenses included those involving petitioners' trips to Hawaii, Idaho, Oregon, and Europe. Claimed Charitable Contributions
Lisa Guenther attended Pacific Lutheran University in Tacoma, Washington, during the years in issue. On their 1978 and 1979 joint Federal income tax returns, petitioners deducted as charitable contributions claimed payments to Pacific Lutheran University. In the notice of deficiency, respondent disallowed $ 5,027 and $ 5,000 for 1978 and 1979, respectively, as Lisa Guenther's tuition paid by petitioners to Pacific Lutheran University. The 1978 deduction did, in fact, represent a tuition payment for her. At the time this charitable contribution deduction was taken, petitioner expected to receive a benefit in return for these funds, namely, a college education for his daughter. The $ 5,000 deducted by petitioners on their 1979 return represented an amount pledged to the University in 1979, but it was not paid in that year. Claimed Expenses on Rental Properties
In 1978 and 1979, petitioners, in their individual capacity, owned four duplexes as rental properties in Portland, Oregon. They have owned these rental duplexes *96 since they were built in 1969. Petitioners claimed $ 55,361 as rental expenses on their 1978 Federal income tax return. Respondent has allowed $ 21,259 of these expenses. The remaining $ 34,102 is in dispute for purposes of the civil fraud issue. Petitioners claimed $ 62,437 as rental expense on their 1979 Federal income tax return. Respondent has allowed $ 21,563 of this amount. The remaining $ 40,874 is in dispute for purposes of the civil fraud issue. Claimed Interest Expense
On their 1978 and 1979 Federal income tax returns, petitioners claimed deductions for interest paid, including interest paid to the First National Bank of Oregon (First National Bank). On Schedule A to petitioners' 1978 return, petitioners claimed a total interest expense deduction of $ 16,120, of which $ 4,494 was represented to have been paid to the First National Bank. However, petitioner only paid $ 466 in interest to the First National Bank in 1978. On Schedule A to petitioners' 1979 return, petitioners claimed a total interest expense deduction of $ 12,855, of which $ 6,797 was represented to have been paid to the First National Bank. However, petitioner only paid $ 1,657 in interest *97 to the First National Bank in 1979. Petitioner has not explained these discrepancies. Petitioner wrote the following checks which were payable to the First National Bank in 1978 and 1979: 1978
1979
Date
Amount
Date
Amount
1/13
$ 100
1/4  $ 100
1/27
100
1/26  100
2/10
100
2/7  100
3/2
100
3/26  100
4/7
100
3/29  100
4/10
100
4/5  100
4/17
100
4/12  100
4/26
100
4/16  100
5/5
100
4/25  100
5/10
100
5/3  100
5/23
100
5/11  100
5/30
100
5/24  100
6/14
100
5/28  100
6/26
100
6/1  200
7/7
100
6/11  100
7/17
100
6/20  100
7/28
100
6/22  100
8/14
100
7/2  100
8/24
100
7/6  100
8/29
100
7/18  100
9/5
100
7/26  570
9/17
100
7/27  100
9/27
200
8/7  100
11/17
100
8/17  100
11/22
100
8/27  200
12/1
100
9/4  200
12/12
100
9/20  200
12/15
100
10/9  200
12/19
100
10/18  200
11/2  200
11/7  200
11/21  200
12/7  200
12/14  300
Petitioner personally received cash for each of these checks. Petitioners claimed interest expense deductions with respect to these checks on their 1978 and 1979 returns. Preparation of Petitioners' Tax Returns by Mr. Elmer Liebert
Elmer *98 Liebert (Mr. Liebert), a certified public accountant, has been preparing petitioners' tax returns for many years. During the years in issue, petitioners employed Mr. Liebert to prepare their 1978 and 1979 joint Federal income tax returns. They did not employ him in any capacity other than to prepare these returns, and Mr. Liebert did not, in any way, keep petitioners' books and records for 1978 and 1979. Mr. Liebert had authority to and did represent petitioners during the Internal Revenue Service (IRS) audit of their 1978 and 1979 Federal income tax returns. Mr. Liebert's son, Richard Liebert, assisted his father in preparing petitioners' returns. Richard Liebert is also a certified public accountant. As part of preparing petitioners' 1978 and 1979 returns, Mr. Liebert interviewed petitioner and obtained information that Mr. Liebert used on the returns. Petitioner submitted notes and documents in the form of workpapers, summary sheets, canceled checks, receipts, and bills. In addition, petitioner filled certain information gaps with oral statements. It was petitioner's intention and his understanding that Mr. Liebert would prepare petitioners' returns from these records *99 and oral statements. Mr. Liebert and Richard Liebert prepared petitioners' 1978 and 1979 Federal income tax returns only from information provided by petitioner. Mr. Liebert did not lose any of petitioners' 1978 or 1979 records. Prior to preparing petitioners' tax returns, Mr. Liebert discussed the reimbursements petitioner received from his employer, Georgia Pacific, for 1978 and 1979. Petitioner submitted some of the same receipts to Mr. Liebert (as records and documents to substantiate travel and business expenses or business/investment travel) that he had submitted to Georgia Pacific, and for which petitioner had been reimbursed by Georgia Pacific. Petitioner submitted a document to Mr. Liebert concerning petitioners' 1978 interest payments, captioned "Interest Paid" (the Interest Summary). (There is no evidence that petitioner prepared a similar document concerning petitioners' 1979 interest payments.) Petitioner personally prepared the Interest Summary. He included the 1978 checks that he wrote to First National Bank, and for which he received cash, as entries on the Interest Summary. Mr. Liebert relied on the Interest Summary when he prepared the interest paid deduction *100 claimed on Schedule A to petitioners' 1978 return. The sum of the dollar entries listed by petitioner on the Interest Summary equals the interest payment amount deducted on petitioners' 1978 Schedule A as paid to the First National Bank. The checks petitioner wrote to the First National Bank in 1978 and 1979 were presented to respondent's revenue agent as verification and substantiation of petitioners' interest deductions for those years. There are, however, no notes, agreements, or contracts in evidence which establish that the checks petitioner wrote to the First National Bank for cash in 1978 and 1979 related to any loan. Petitioner reviewed all the figures that Mr. Liebert entered on petitioners' 1978 and 1979 Federal income tax returns before petitioners filed these returns with the IRS. Revenue Agents' Examination of Petitioners' Tax Returns
In early August 1980, Revenue Agent David Hummel (Mr. Hummel) [3] informed petitioner that he would be examining petitioners' 1978 Federal income tax return. In response to Mr. Hummel's questions regarding how petitioners' 1978 return was prepared and how the numbers on the return were formulated, petitioner stated that he assembled *101 the basic numbers and information and provided them to Mr. Liebert. With this information, Mr. Liebert prepared petitioners' 1978 return. Mr. Hummel requested petitioner to produce books and records to substantiate the $ 49,969 travel and entertainment expenses claimed on petitioners' 1978 return. In response,petitioner merely handed documents to Mr. Hummel one at a time, rather than permitting Mr. Hummel to examine all the records. The documents provided by petitioner consisted of disorganized receipts and canceled checks. At no time did petitioner provide any diaries or log books *102 showing his travel and entertainment expenses. Upon reviewing petitioner's 1978 travel and entertainment expenses, Mr. Hummel found that none of the receipts provided by petitioner included an annotation that stated a business purpose for the expenditure or the name of any individual involved. Petitioner informed Mr. Hummel that he did not keep a record or log of his travel expenses that included the purposes of his trips and when he incurred the costs, but, instead, kept all of this information in his head. When questioned by Mr. Hummel, petitioner stated that he incurred these expenses in connection with investment properties and the possibility of acquiring them. However, petitioner never identified any specific investments to Mr. Hummel. Neither has he identified sources of funding for his investments or specific persons he spoke with regarding such alleged investments. With respect to petitioners' 1978 trips to Hawaii, Idaho, and Europe, Mr. Hummel asked petitioner to identify the specific business purposes of these trips. Petitioner agreed to provide this information, but never did. He neither provided any documentation showing the business purpose of these trips nor *103 identified any specific investments or provided any specific names or properties he viewed. In addition, petitioner told Mr. Hummel that all of his travel expenses that were reimbursed by Georgia Pacific were accounted for separately and that none of these costs were included in the travel expenses claimed on petitioners' 1978 return. During the course of his examination, Mr. Hummel made several written requests for documents and information regarding the adjustments under examination. Petitioner or his accountant, Mr. Liebert, received these requests. Because Mr. Hummel was not provided with the requested documents and did not have time to examine the issues in detail, petitioner stated that he would send the materials to Mr. Liebert. In early 1981, Mr. Hummel moved his examination from petitioner's office to Mr. Liebert's office. At Mr. Liebert's office, Mr. Hummel was provided with a bundle of records in support of petitioners' 1978 travel and entertainment expenses. Based on this information, Mr. Hummel made a summary workpaper of all the evidence presented. The documentation provided to Mr. Hummel to substantiate petitioners' 1978 travel and entertainment expenses totaled *104 $ 15,949.45. Upon being informed of this amount as well as the fact that the amount represented a large discrepancy compared to what was reported on petitioners' 1978 tax return, petitioner accused his accountant of losing petitioners' records. Mr. Liebert denied this accusation. Shortly thereafter, petitioner accused Mr. Hummel of losing the records. Mr. Hummel also denied petitioner's accusation. At no time has petitioner provided any explanation (other than his lost records accusations) for the discrepancy between the amount supported by his source documents for the 1978 travel and entertainment expenses and the amount claimed for these expenses on petitioners' 1978 return. When Mr. Hummel reviewed petitioners' travel and entertainment expense records in Mr. Liebert's office in early 1981, he found the records to be in a different form than when he first saw them in petitioner's office. The documents were attached to sheets of paper that included a description of each item. In analyzing this documentation, Mr. Hummel found that petitioner was submitting items as travel and entertainment expenses for which he had already been reimbursed by Georgia Pacific. Because petitioner *105 did not provide the documentation to support certain amounts claimed on petitioners' 1978 Federal income tax return, Mr. Hummel expanded the scope of his examination to petitioners' 1979 return. For 1979, Mr. Hummel repeated his analysis of petitioners' travel, entertainment, and business expenses. When Mr. Hummel informed petitioner that a review of petitioners' 1978 and 1979 travel and entertainment records indicated that the documentation did not support the amounts claimed on their returns, petitioner stated that Mr. Hummel had all the records and that there were no additional records. Mr. Hummel continued his examination by reviewing petitioners' records for their 1978 and 1979 charitable contribution deductions. He prepared a summary worksheet based upon the records presented. Upon reviewing petitioners' records, Mr. Hummel found that petitioner had deducted certain items twice. Petitioner had listed checks for these items, and he again listed the items in the form of invoices and statements he received at the end of the year. After reviewing these records, Mr. Hummel questioned petitioner regarding the amounts deducted as charitable contributions which were paid for *106 Lisa Guenther's education at Pacific Lutheran University. Petitioner admitted that the expenses were for his daughter's education, but stated that he believed that the added expenses incurred to send her to a private religious school, rather than to Portland State University, a public institution, were charitable in nature and therefore deductible. In the course of his examination, Mr. Hummel prepared a summary of petitioners' 1978 rental expenses from documentation provided to substantiate these expenses. Upon reviewing petitioners' records, Mr. Hummel found insurance expenses attributable to a different taxpayer, expenses from prior years, accounting expenses related to the preparation of Lisa Guenther's 1977 tax return, duplication of legal and accounting expenses, and the deduction of a reserve of taxes that was never paid. As the final adjustment in his examination, Mr. Hummel reviewed petitioners' records, including the canceled checks, for petitioners' 1978 and 1979 interest expenses. Mr. Hummel asked petitioner about these expenses, namely, the checks to First National Bank that petitioner had cashed. Petitioner stated that he would provide loan documentation to support *107 these interest deductions, that the checks represented payments on a loan, and that the loan purpose associated with these checks would be established by the loan documentation. However, petitioner did not provide proof that a loan existed, and he did not provide an explanation to establish that the checks qualified as deductible interest expenses. When Mr. Hummel informed petitioner that the checks in question had been cashed, petitioner denied receiving cash for these checks, became angry, and told Mr. Hummel that he did not want him anywhere near the bank where the checks had been cashed. In 1986, Revenue Agent Alan Eldridge [4] became involved in petitioners' case. In response to respondent's initial discovery requests, petitioners provided records and documents to substantiate their 1978 and 1979 miscellaneous itemized deductions. Mr. Eldridge analyzed these documents and prepared summary workpapers. The total amount of the documented miscellaneous itemized deductions was substantially less than the amount reported on petitioners' 1978 and 1979 returns. Mr. Eldridge's workpapers (prepared from petitioners' records and documents) show that petitioners continued the pattern *108 of deducting the same items twice, such as a check and an invoice in the same amount and for the same item. In further response to respondent's initial discovery requests, petitioners provided several documents and records for purposes of substantiating their 1978 and 1979 rental expenses. Mr. Eldridge analyzed these records and documents and prepared summary workpapers. Mr. Eldridge found duplicated items reported as petitioners' rental expenses. ULTIMATE FINDINGS OF FACT 1. Parts of the underpayments of income taxes required to be shown on petitioners' Federal income tax returns for 1978 and 1979 were due to petitioner Kenneth W. Guenther's fraud. 2. The assessment and collection of petitioners' Federal income taxes for 1978 are not barred by the statute of limitations. OPINION Issue *109 1. Section 6653(b) Additions to Tax
The principal issue is whether petitioner is liable for the fraud additions to tax for 1978 and 1979. Section 6653(b) provides for an addition to tax equal to 50 percent of the amount of the entire underpayment if any part of an underpayment is due to fraud. Respondent bears the burden of proof on this issue. Sec. 7454; Rule 142(b). Petitioner argues that respondent has failed to prove that any part of the underpayments stemming from petitioners' 1978 and 1979 Federal income taxes was due to fraud on his part. While respondent has conceded this issue with regard to Mrs. Guenther, it is clear that one spouse can be held liable for fraud in the case of a joint return. See sec. 6653(b); Lollis v. Commissioner, 595 F.2d 1189, 1192 (9th Cir. 1979), affg. T.C. Memo. 1976-15; Stone v. Commissioner, 56 T.C. 213, 227 (1971). Fraud is intentional wrongdoing on the part of the taxpayer, Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958), or the intentional commission of an act or acts for the specific purpose of evading a tax *110 believed to be owing. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Akland v. Commissioner, 767 F.2d 618, 621 (9th Cir. 1985), affg. T.C. Memo. 1983-249; Niedringhaus v. Commissioner, 99 T.C.     (1992); McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). Respondent has the burden of proving, by clear and convincing evidence, underpayments attributable to fraud for each taxable year. Sec. 7454(a); Rule 142(b); Akland v. Commissioner, supra; Katz v. Commissioner, 90 T.C. 1130, 1143 (1988); Castillo v. Commissioner, 84 T.C. 405, 408-409 (1985). To establish fraud respondent must prove that (1) an underpayment exists and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); *111 Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). It is well established that, for purposes of the fraud addition, an understatement of taxes can be accomplished by an overstatement of deductions as well as by an omission of income. Estate of Temple v. Commissioner, 67 T.C. 143, 161 (1976). Respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each year in issue is attributable to fraud. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274. The parties have agreed that there is an underpayment for each of the years in issue. Thus, this case turns on whether petitioner had a fraudulent intent. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Edelson v. Commissioner, 829 F.2d 828, 832 (9th Cir. 1987), *112 affg. T.C. Memo. 1986-223; DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed, but rather must be established by affirmative evidence. Edelson v. Commissioner, supra; Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Direct evidence of the requisite fraudulent intent is, of course, seldom available, but fraud may be proved by circumstantial evidence. Spies v. United States, 317 U.S. 492, 499 (1943); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The taxpayer's entire course of conduct may establish the requisite intent. Stone v. Commissioner, supra at 223-224; Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). *113 The intent to conceal or mislead may be inferred from a pattern of conduct. See Spies v. United States, supra.
Over the years, courts have developed various factors, or "badges", which tend to establish fraud. Recklitis v. Commissioner, supra, at 910. These include: (1) A pattern of understatement of income; (2) inadequate books and records; (3) failure to file tax returns; (4) concealment of assets; (5) failure to cooperate with tax authorities; (6) income from illegal activities; (7) implausible or inconsistent explanations of behavior; (8) an intent to mislead which may be inferred from a pattern of conduct; (9) lack of credibility of the taxpayer's testimony; and (10) dealings in cash. Laurins v. Commissioner, 889 F.2d 910, 913 (9th Cir. 1989), affg. Norman v. Commissioner, T.C. Memo. 1987-265; Edelson v. Commissioner, supra at 832; Bradford v. Commissioner, supra at 307; Petzoldt v. Commissioner, supra at 699; Rowlee v. Commissioner, supra at 1125; *114 Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980); McGee v. Commissioner, 61 T.C. at 260. These "badges of fraud" are nonexclusive. Miller v. Commissioner, 94 T.C. 316, 334 (1990). Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia constitutes persuasive circumstantial evidence. Bradford v. Commissioner, 796 F.2d at 307; Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603. The taxpayer's background and the context of the events in question may be considered as circumstantial evidence of fraud. Spies v. United States, supra at 497; United States v. Murdock, 290 U.S. 389, 395 (1933). The sophistication, education, and intelligence of the taxpayer are also relevant to this determination. Halle v. Commissioner, 175 F.2d 500, 503 (2d Cir. 1949), affg. 7 T.C. 245 (1946); Niedringhaus *115 v. Commissioner, supra; Drobny v. Commissioner, 86 T.C. 1326, 1349 (1986). Arguing that several of the above-enumerated indicia, as well as other indications of fraud, are present in the instant case, respondent claims to have met the burden of proving fraud by clear and convincing evidence. To the contrary, petitioner argues that the 1978 and 1979 understatements simply resulted from his mistakes and gross negligence, but not fraud, and that the section 6653(b) additions to tax should not be imposed. Having considered the entire record before us, we conclude that petitioner's underpayments of tax for 1978 and 1979 were due to fraud. Petitioner is a well-educated and experienced business executive. He is also an active and successful investor in real estate and in the stock market. Nevertheless, he substantially understated petitioners' 1978 and 1979 income. In fact, it is stipulated that petitioners understated their income by $ 7,402 for 1978 and $ 27,255 for 1979. Repeated understatements in successive years, when coupled with other circumstances showing an intent to conceal or misstate taxable income, present a basis on which we may *116 properly infer fraud. Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), affg. T.C. Memo. 1985-148; Anderson v. Commissioner, 250 F.2d 242, 250 (5th Cir. 1957), affg. on this issue T.C. Memo. 1956-178. Petitioner deducted large amounts of business, investment, rental, travel, and entertainment expenses during 1978 and 1979. He could not substantiate or explain many of the claimed expenses. He also deducted interest payments and charitable contributions, but the documentation produced to substantiate these claimed deductions was substantially less than the amounts shown on petitioners' 1978 and 1979 tax returns. There is convincing evidence in this record establishing that petitioner intended to fraudulently evade income taxes for each year. It is clear that he claimed deductions far in excess of any substantiating documents or proof; he double-deducted certain items; and he deducted large amounts of personal expenditures. Petitioner also attempted to conceal his fraudulent actions by providing respondent's agents with a large quantity of disorganized receipts *117 that did not accurately reflect his expenses. Petitioner contends that the underpayments on the tax returns resulted from gross negligence, not fraud, and that his accountant, Mr. Liebert, was responsible for such gross errors. We reject these contentions. The stipulated facts and testimony clearly establish that the underpayments were due to fraud, and that petitioner, not his accountant, was responsible for the erroneous items claimed on the returns. Petitioner employed Mr. Liebert for the sole purpose of preparing the tax returns. Mr. Liebert did not keep petitioners' books and records during the years in issue. Petitioner kept his own records, and bears full responsibility for the information given to his accountant. When petitioner submitted his receipts and notes to Mr. Liebert, it was his intention that Mr. Liebert would prepare petitioners' returns from such records. And Mr. Liebert did prepare petitioners' 1978 and 1979 tax returns entirely from information provided by petitioner. Moreover, petitioner reviewed all the figures on the returns before they were filed with the IRS. Indeed, the fraudulent items claimed on the tax returns can be directly traced to petitioner. *118 See Estate of Temple v. Commissioner, 67 T.C. 143, 162 (1976). The badges of fraud that exist in this case include: A pattern of understatement of income; inadequate books and records; implausible or inconsistent explanations of behavior; an intent to mislead which may be inferred from a pattern of conduct; and lack of credibility of petitioner's testimony. See Holland v. United States, 348 U.S. 121, 137 (1954); Spies v. United States, 317 U.S. at 499; Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601. In our view petitioner committed fraudulent acts with respect to deductions claimed for: (1) Business, travel, and entertainment expenses; (2) charitable contributions; (3) rental expenses; and (4) interest expenses. a. Evidence of Fraud Based on 1978 and 1979 Claimed Business, Investment, Travel, and Entertainment Deductions
Petitioner has not substantiated the $ 49,969 and $ 13,902 of business, travel, and entertainment expenses claimed on petitioners' 1978 and 1979 tax returns. The *119 business, travel, and entertainment records produced by petitioner totaled only $ 15,949.45 and $ 7,184.73, respectively for each year. Petitioner has not explained the discrepancies between the deductions taken on the returns and the documented expenses, although he stated that Mr. Hummel had all his records for these expenses. He also falsely accused Messrs. Liebert and Hummel of losing his records. Petitioner deducted expenses that did not exist; he deducted expenses for reimbursed expenses not included in income; and he deducted expenses for personal items. He substantially overstated his 1978 and 1979 business, investment, and travel and entertainment expenses. The substantial amounts by which these deductions were overstated are not properly explained by claiming human error. See Neaderland v. Commissioner, 52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cir. 1970). Thus, we conclude that petitioner fraudulently understated petitioners' 1978 and 1979 Federal income taxes by deliberately overstating his deductions. This conclusion is supported by the fact that petitioner failed to provide any evidence or plausible *120 explanation regarding the overstated expenses claimed on petitioners' tax returns. As stated above, an underpayment of tax for purposes of section 6653(b) may be accomplished by a taxpayer's overstatement of deductions. See Estate of Temple v. Commissioner, supra at 161; Hicks Co. v. Commissioner, 56 T.C. 982, 1019 (1971), affd. 470 F.2d 87 (1st Cir. 1972). At trial, petitioner attempted to defend his 1978 and 1979 trips to Hawaii, Sun Valley, Sun River, and Europe as giving rise to valid business deductions. However, he did not keep contemporaneous records of any alleged business dealings or activities while on these trips. On several occasions, Mr. Hummel asked petitioner to identify specific investments, but petitioner never did so. Neither has petitioner provided any diaries or log books of his travel and entertainment expenses. Petitioner did not maintain proper books and records to substantiate his 1978 and 1979 claimed business, investment, travel, and entertainment expenses. Failure to maintain adequate records is among the indicia of fraud. Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980); *121 Nicholas v. Commissioner, 70 T.C. 1057, 1066 (1978); Otsuki v. Commissioner, 53 T.C. 96, 109 (1969). Another of the indicia of petitioner's fraudulent behavior is his attempt to deduct personal items, i.e., his family vacation trips, as business, travel, and entertainment expenses. Petitioner engaged in various recreational activities on these trips, and, as we have found, he provided no proof of any business purpose for these trips. Personal expenses are not deductible. Sec. 262. A practice of claiming personal expenses as business expenses has been held to justify the imposition of the fraud addition to tax. See, e.g., Hicks Co. v. Commissioner, supra at 1030; Benes v. Commissioner, 42 T.C. 358 (1964), affd. per order 355 F.2d 929 (6th Cir. 1966); Ramsey v. Commissioner, T.C. Memo. 1984-251. By attempting to convert nondeductible personal expenses into deductible business expenses, petitioner fraudulently understated petitioners' 1978 and 1979 Federal income taxes through an overstatement *122 of deductions. See Hicks Co. v. Commissioner, supra at 1019; Neaderland v. Commissioner, 52 T.C. at 540. In addition, petitioner made false statements to Mr. Hummel that his trips were for business purposes, when it is clear that they were personal expenses. False and misleading statements to an investigating agent constitute a course of conduct calculated to mislead or conceal, which is evidence of fraud. Gajewski v. Commissioner, 67 T.C. 181, 200 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Beaver v. Commissioner, 55 T.C. 85, 93 (1970). We think petitioner's misrepresentations clearly exhibit a deliberate plan to evade the payment of taxes for 1978 and 1979. Petitioner also made false and misleading statements to Mr. Hummel regarding his expenses which were reimbursed by Georgia Pacific. He told Mr. Hummel that all of his travel expenses reimbursed by Georgia Pacific were accounted for separately, and that none of these costs were included in his travel expenses claimed on the joint returns. In *123 fact, the records petitioner submitted to Mr. Hummel to support some of the claimed travel and entertainment deductions reflected travel expenses on behalf of Georgia Pacific for which he had already been reimbursed. Thus, petitioners' deductions were overstated because the Georgia Pacific reimbursements were erroneously deducted as travel and entertainment expenses for 1978 and 1979. b. Evidence of Fraud Based on 1978 and 1979 Claimed Charitable Contribution Deductions
Charitable contribution deductions for 1978 and 1979 were taken for payments petitioner made to Pacific Lutheran University. The 1978 payment represented tuition for his daughter's education. The $ 5,000 deducted on the 1979 return was an amount pledged to Pacific Lutheran University during 1979 but not paid during that year. At the time Mr. Hummel questioned petitioner about these deductions during the initial audit, petitioner admitted that the claimed expenses were for his daughter's private college education, but stated that he believed the excess of those expenses over what his daughter would have paid to go to Portland State University, a public institution, were charitable in nature and therefore *124 deductible. At trial, he admitted taking deductions for his daughter's tuition, but did not attempt to further justify these deductions. Petitioner admitted that at the time he took the deductions, he was aware that he was not making a donation to Pacific Lutheran University without the expectation of receiving a benefit in return. It is clear that petitioner knew that college tuition payments are not charitable gifts. Petitioner's background and business acumen are not consistent with his claimed belief that he was entitled to such deductions. We note, as stipulated, that several of petitioners' charitable contribution items were deducted twice. Petitioner offered no evidence or testimony to challenge respondent's determination that these items represented double deductions of the same expenses. Where a taxpayer offers no explanation at trial to contest an established overstatement of deductions, we have held that the taxpayer knowingly overstated his or her deductions, justifying the imposition of the fraud addition to tax. See Robinson v. Commissioner, T.C. Memo. 1984-188. By claiming deductions twice for the same expense, by claiming deductions *125 for Lisa Guenther's tuition, and by claiming a deduction for an amount pledged, but not paid, during 1979, petitioner once again understated petitioners' taxable income by fraudulently overstating his deductions. See Hicks Co. v. Commissioner, supra at 1019; Neaderland v. Commissioner, supra.
c. Evidence of Fraud Based on 1978 and 1979 Claimed Rental Expense Deductions
Petitioner also overstated expenses on rental properties. For 1978, he provided his records to the investigating revenue agent for purposes of substantiating such expenses. Mr. Hummel summarized the records in a workpaper, which revealed that petitioner overstated his rental expense deductions by, among other things, presenting evidence for expenses of other taxpayers, and deducting the same item twice. For 1979, petitioner overstated petitioners' rental expense deductions through double deductions of the identical items. Again petitioner mislead respondent by overstating such expenses. His conduct was another fraudulent attempt to understate petitioners' taxes by overstating deductions to which he was legally entitled. See Hicks Co. v. Commissioner, supra at 1019; *126 Neaderland v. Commissioner, supra.
d. Evidence of Fraud Based on 1978 and 1979 Claimed Interest Expense Deductions
A further indication of fraud is found in the claimed interest expense deductions. During 1978 and 1979 petitioner repeatedly cashed checks made payable to the First National Bank. However, he represented to respondent's agent, as well as on petitioners' 1978 and 1979 tax returns, that these "payments" qualified as interest expense deductions. Petitioner submitted an Interest Summary to Mr. Liebert, his accountant, for purposes of establishing the 1978 interest expense deduction. Petitioner listed the checks he wrote to the First National Bank on the Interest Summary, despite the fact that he actually received cash for the checks. The sum of the dollar entries on the Interest Summary prepared by petitioner equals the First National Bank interest payment claimed on Schedule A of petitioners' 1978 tax return. In 1979, petitioner also wrote checks to the First National Bank which he cashed. These amounts were claimed on petitioners' 1979 tax return as interest expense deductions. Petitioner presented his 1978 and 1979 checks *127 to Mr. Hummel for the purpose of verifying and substantiating the interest expenses. Petitioner misinformed Mr. Hummel during the investigation that the checks represented a loan from the First National Bank and that documentation of the loan and its purpose existed. However, no documentation was ever presented to Mr. Hummel regarding the loan. There are no notes, agreements, or contracts to establish that these 1978 and 1979 checks related to any loan or other indebtedness. Petitioner attempted to mislead and conceal from Mr. Hummel that the claimed interest expense deductions in 1978 and 1979 constituted the cash he received from writing checks payable to the bank. At trial, petitioner admitted that he cashed the checks that were payable to First National Bank and that they were not interest payments. However, he testified that Mr. Liebert took the 1978 Interest Summary that petitioner prepared and erroneously converted those payments into interest expenses. Although petitioner implies that Mr. Liebert is responsible for incorrectly classifying these amounts as interest expenses, it was his intention that Mr. Liebert prepare petitioners' tax returns from the information he *128 provided. The Interest Summary and canceled checks that petitioner gave Mr. Liebert were the documents that Mr. Liebert used to prepare petitioners' 1978 and 1979 returns. Thus, petitioner was responsible for fraudulently claiming the interest expense deductions on the returns, rather than Mr. Liebert. See Estate of Temple v. Commissioner, 67 T.C. 143, 162 (1976). The blame cannot be shifted. e. Summary
All in all, the evidence shows, clearly and convincingly, that petitioner intentionally committed fraudulent acts by incorrectly deducting business, travel, and entertainment expenses, charitable contributions, rental expenses, and interest expenses. The abnormally large discrepancies between the deductions claimed on the Federal income tax returns and the deductions for which petitioner had proof and to which he was entitled, preclude any acceptable defense of innocent mistake or oversight. [5] The section 6653(b) addition to tax for fraud is applicable if any part of an underpayment is due to fraud. Here there is an abundance of evidence to support the imposition of the section 6653(b) addition to tax against petitioner for both 1978 *129 and 1979. Accordingly, we hold that petitioner is so liable. Issue 2. Statute of Limitations
The secondary issue is whether respondent is barred by the *130 statute of limitations from assessing and collecting petitioners' Federal income taxes for 1978. As a general rule, pursuant to section 6501(a), the Commissioner must assess a deficiency within 3 years after a taxpayer files a return. Because respondent's notice of deficiency was mailed more than 3 years after petitioners filed their Federal income tax return for 1978, respondent is time barred from assessing a tax for that year unless a statutory exception applies. Section 6501(c)(1), which provides an exception to the general rule, permits the Commissioner to assess a deficiency at any time if the taxpayer files a false or fraudulent return with the intent to evade tax. Because respondent has proved by clear and convincing evidence that at least a part of petitioners' 1978 underpayment of tax was due to fraud, the section 6501(c)(1) exception is applicable. See, e.g., Estate of Temple v. Commissioner, supra at 164. We therefore hold that the assessment and collection of petitioners' Federal income taxes for 1978 are not barred by the statute of limitations. To reflect the agreement of the parties regarding the deficiencies and our conclusions *131 with respect to the disputed issues, An appropriate order and decision will be entered. Footnotes
1. On Dec. 23, 1992, respondent filed a written Motion to Dismiss for Lack of Prosecution with regard to Marva Guenther. In support thereof, respondent stated as follows: 1. This case was regularly called for trial at a Special Trial Session of this Court on September 21, 1982, at Portland, Oregon. Counsel for the respondent and counsel for the petitioner Kenneth W. Guenther appeared and pronounced ready for trial. No appearance was made by or on behalf of the petitioner Marva Guenther. 2. All the material allegations of fact set forth in the petition in support of the assignments of error have been denied by respondent in his Answer. 3. The respondent has conceded the civil fraud penalty under I.R.C. sec. 6653(b) with respect to the petitioner Marva Guenther for each of the taxable years 1978 and 1979. 4. With respect to the taxable year 1978, if the respondent does not prove civil fraud, then both petitioners will not owe any deficiency for said year. 5. No other issues have been raised upon which the burden of proof is upon respondent, and the respondent has not conceded any error assigned in the petition, other than to reach the agreed-to deficiencies for each taxable year at issue. 6. No evidence has been adduced in support of the assignments of error raised in the petition by the petitioners other than to reach the agreed-to deficiencies for each of the taxable years 1978 and 1979.↩
We will grant respondent's Motion to Dismiss for Lack of Prosecution with regard to Marva Guenther (subject to the parties' agreed deficiencies for 1978 and 1979).
2. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. David Hummel worked as a revenue agent from October 1973 through June 1983. He received a bachelor of arts degree in business administration from the University of Alaska, and a master of arts degree in accounting from Utah State University. He also worked as an instructor at the Internal Revenue Service and at a number of tax organizations. At the time of trial, Mr. Hummel was employed by the Bonneville Power Administration.↩
4. At the time of trial, Revenue Agent Alan Eldridge had been employed by the Internal Revenue Service as a revenue agent for 22 years. He has a bachelor of arts degree in accounting and is a certified public accountant.↩
5. Based entirely on his uncorroborated testimony, petitioner urges us to find that he lacked any fraudulent intent. Suffice it to say that we are unwilling to subjectively decide what petitioner's intent or state of mind was at the time he filed petitioners' joint Federal income tax returns except by considering and evaluating the objective indicia of fraud previously enumerated in this opinion. The Courts of Appeals and this Court have repeatedly relied on such indicia in deciding whether fraudulent intent exists. See Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Niedringhaus v. Commissioner, 99 T.C.     (1992). It would be clearly erroneous if we did otherwise. See Lord v. Commissioner, 525 F.2d 741↩ (9th Cir. 1975).